

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Sean R. Delaney* | *Mailing Address:* | *Office Location:* | *DIRECT: 410-209-4913* |
| *Assistant United States Attorney* | *36 S. Charles Street, 4th Floor* | *36 S. Charles Street, 4th Floor* | *MAIN: 410-209-4800* |
| *Sean.Delaney@usdoj.gov* | *Baltimore, MD 21201* | *Baltimore, MD 21201* | *FAX: 410-962-3091* |



September 17, 2020

Meghan G. Michael
Office of the Federal Public Defender
100 S. Charles Street
Tower II, Ninth Floor
Baltimore, MD 21201

> Re:   United States v. David Green,
>        Criminal No. GLR-19-567

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, David Green (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by September 25, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.     The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1349. The Defendant admits that the Defendant is, in fact, guilty of the offense(s) and will so advise the Court.

### Elements of the Offense(s)

2.     The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the District of Maryland:

>   a.   The Defendant and at least one other person entered into an unlawful agreement;

>   b.   The purpose of the agreement was to knowingly execute or attempt to execute a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations and promises, and to use or cause the use of

Rev. August 2018

the mails (or a private or commercial interstate carrier or interstate wires) as charged in the Indictment;

c.   The Defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1349 | N/A | 20 years | 3 years | $250,000 or twice gross gain/loss | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant

Rev. August 2018

2

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns.  The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the Government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify.  If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case.  Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that:

a.    The applicable base offense level is 7, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2B1.1(a)(1).

b.    The offense level is increased an additional 14 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the loss in this case was between $550,000 and $1,500,000;

c.    The offense level is increased an additional 4 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(B), because the offense resulted in a substantial financial hardship to 5 or more victims;

      d.      The offense level is increased an additional 2 levels pursuant to U.S.S.G. § 3B1.1(c), because the defendant was an organizer, leader, manager, or supervisor in any criminal activity.

      e.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      f.      **Accordingly, the resulting ANTICIPATED offense level, after reduction for acceptance of responsibility, is 24.**

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.      Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

9.      At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

Rev. August 2018

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Restitution

11.      The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least $939,300. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Forfeiture

12.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable

to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

## Defendant's Conduct Prior to Sentencing and Breach

13.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

14.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

15.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

16.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other

Rev. August 2018

7

agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

_____
Sean R. Delaney
Matthew J. Maddox
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_____
Date

_____
David Green

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/19/20
_____
Date

_____
Meghan G. Michael, Esq.

Rev. August 2018

8

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant DAVID GREEN ("GREEN") was a resident of Miami Gardens, Florida. From at least in or about September 2018 through at least in or about March 2019, in the District of Maryland and elsewhere, GREEN conspired with others known and unknown to commit mail fraud. Specifically, GREEN's co-conspirators persuaded elderly victims to send thousands of dollars in cash through the United States Postal Service and by private and commercial interstate carriers to members of the conspiracy under false pretenses that:

a.    the money would be used to help the victims' relatives pay legal or other expenses in connection with crimes and other incidents that had not occurred, and

b.    the money would be sent to particular individuals at their addresses, rather than to members of the conspiracy falsely claiming to reside at those addressees

(collectively the "scheme to defraud").

GREEN's co-conspirators telephoned elderly victims throughout the United States and, while posing as a police officer, lawyer, or other individual, falsely told the victim that a relative, typically the victim's grandchild, had been incarcerated in connection with a car accident or traffic stop involving a crime, and needed money for bail and legal fees, often tens of thousands of dollars. The co-conspirators also posed as the victims' relatives themselves in order to further induce the victims to send the cash. The co-conspirators described the situation as extremely serious, sometimes indicating that illegal drugs had been found in the vehicle, or that the occupant of another car was injured. In order to conceal the crime, the co-conspirators told the victims false information, like that there had been a "gag order" placed on the case requiring secrecy, or that the situation was embarrassing for the grandchild, and that the victim should not share the information with others.

During the telephone calls, the co-conspirators directed the victims to send cash to a particular address via overnight delivery service, such as United States Postal Service Priority Mail, Fed Ex, and United Parcel Service. If the victims sent cash as directed by the co-conspirators, the co-conspirators would call the victims again and ask for more cash, claiming that additional funds were necessary for various purposes, such as their grandchild's legal expenses, bail costs, or fines, or to pay damages. The co-conspirators obtained tens of thousands of dollars from victims.

In order to conceal the crime, GREEN and other co-conspirators identified residential locations across the country where the cash should be sent, including but not limited to addresses

Rev. August 2018

9

in Maryland, Delaware, Pennsylvania, and Florida. GREEN and others identified locations that would either be vacant or for sale, so no one would be at those locations at the time of the deliveries.

GREEN and other co-conspirators retrieved the packages of cash and delivered the fraud proceeds to other people involved in the scheme. GREEN and other co-conspirators recruited and instructed additional people to assist in retrieving the packages of cash when they were delivered to the specified locations.

GREEN joined the conspiracy in or about September 2018 and flew to the Maryland area for the purpose of executing the scheme. In early January 2019, GREEN and another co-conspirator took a flight from Florida to Maryland for the purpose of retrieving packages.

On or about January 7, 2019, Victim #4 (as identified in the Indictment), a 91 year old from Bainbridge Island, Washington, received a phone call from a person purporting to be Jeremy Scottdale. The victim was told that his grandson was a passenger in a vehicle stopped with large amounts of cocaine and was being held on Federal drug charges. The individual directed Victim #4 to send $13,000 cash for bail to an address in Baltimore, Maryland.

On or about January 8, 2019, GREEN sent text messages to another co-conspirator stating "Jeremy Scottdale," "UPS Delivery," and containing a UPS Tracking Number. He further directed the other co-conspirator that the package required a signature upon delivery. The other co-conspirator collected the package, and falsely stated that he was the intended recipient.

At the further direction of a co-conspirator, Victim #4 sent an additional $9,000 for the purported purpose of retaining an attorney.

Also in or about January 2019, Victim #5 (as identified in the Indictment), an 89 year old from Westland Michigan, was contacted by an individual representing himself to be "Officer Booth." This individual told her that her grandson had been in a car accident and that drugs were found in the trunk. At the direction of the caller, on January 14, 2019, Victim #5 sent $8,000 in cash to an address in Baltimore, Maryland via FedEx.

On January 15, 2019, David Green instructed another co-conspirator on accepting the package. Specifically, he stated, "Tell the delivery dude yo grandma messed and she was supposed to send it to 3208 Lawnview Ave not Lake Ave. Be like u not from there but I got all the info."

In total, Victim #5 lost $30,000 to the scam.

In or about January 2019, Victim #6 (as identified in the Indictment), an 89 year old from Fort Pierce, Florida, received a phone call from someone purporting to be Victim #6's niece. Victim #6 was told that his niece had been in a car accident. At the instruction of the caller, Victim #6 sent $8,000 in cash to an address in Baltimore, Maryland via UPS. On January 18, 2019, Green retrieved this package along with another co-conspirator. In total, Victim #6 lost $17,500 to the scam.

Rev. August 2018

10

On or about March 26, 2019, GREEN was arrested by New Castle County Police in Delaware while trying to retrieve a package sent from another victim to a location in Newark, Delaware.

As a result of the execution of the scheme to defraud, between September 2018 and March 2019, GREEN and others caused at least 28 different victims to send a total of at least $939,300. GREEN's conduct resulted in substantial financial hardship to at least five but not more than 24 of the victims.

SO STIPULATED:

_____
Sean R. Delaney
Assistant United States Attorney

_____
David Green
Defendant

_____
Meghan G. Michael, Esq.
Counsel for Defendant

Rev. August 2018

11